The first case is number 14-3561, United States v. Dennis, Mr. Yaster and Mr. Coyne. They should be here watching you, shouldn't they, all those people? We'll see. I thought they were here for this argument. Well, may it please the court, my name is Benjamin Yaster. I represent Defendant Appellant Ralph Dennis. I've reserved two minutes for rebuttal. Mr. Yaster, can I just direct you to, well, let me see if you can make a concession. Maybe you won't. But as I read the record, your client had a history of drug dealing over an extended period of time. It was mostly pound quantities of marijuana, correct? No, Your Honor. So it was three prior convictions for personal use quantities of crack cocaine, and then there was a conviction for pound quantities of marijuana. Pound quantities of marijuana. That's correct. And there was some cocaine dealing. Yes. Okay. So is it your stronger argument that he didn't have any propensity for the gun charge, the other two charges, the armed robbery and the use of the firearm? Yes, insofar as we're relying on his criminal history, that's correct, because there is nothing in his criminal past or his history in general that indicates a propensity for violence. And would you agree that it's possible or appropriate for us to have a split verdict, so to speak, on appeal on that, or do you think it's all or nothing? No, I think it's all or nothing, Your Honor. And why is that? Because the robbery and the wholesale distribution of cocaine are commingled. You can't separate them. The only way that Dennis was ever going to have access to wholesale quantities of cocaine to sell was by committing the armed robbery. So it's sort of a fruit-of-the-poisonous-tree type of thing? I don't yet appreciate the derivative nature of that argument, and there wasn't really anything in the briefing on that. What we always had in the briefing was that. In that case, maybe you both agree that it's all or nothing, because that seemed to be the way the briefs came about. That's correct. Now, we had independent bases for arguing why he didn't have propensity to sell wholesale kilograms of cocaine. So what we argued in our briefs, separately from the derivative argument, is that there's a significant difference between the drug dealing he previously did and what he did. But that's quantity-based.  What Dennis testified to at trial was that it wasn't just the difference between a pound of marijuana and multiple kilograms of cocaine. It was also that marijuana and cocaine involved different risks. But he had prior cocaine dealings. But it was crack cocaine, and it was a much smaller volume. The most he ever sold was one-tenth of one kilogram. That's why I said it's a quantity issue. Yes. You're saying he didn't have the propensity for this quantity of drug dealing. Yes, he didn't have the propensity for this quantity of drug dealing. Yes, we would agree with that. And if we disagree with you on that, you're going to lose on the firearms and the armed robbery? No, no, no. All our argument is that a jury could have drawn an inference from his criminal history that he lacked the propensity to sell multiple kilograms of cocaine. The point we are making in our briefs and here on appeal is that that question, because a jury could have drawn that inference, should have been put to the jury. It doesn't follow as a matter of law that because he previously sold some drugs, he necessarily had a predisposition to sell multiple kilograms of cocaine. The best case I can cite to you on that is Sherman v. United States. So in that case, the defendant had two prior narcotics convictions and was still found to have been entrapped when he was set up to commit a third narcotics conviction. How do you deal with the United States v. Beverly 1983 case from our court? I mean, that seems like a much more egregious set of facts. An ATF agent came up with the idea for arson. Philadelphia detective said he was the owner of a building that would be burned. The ATF agent bought and supplied the gasoline for the fire. Despite all of that, we said that there wasn't enough for entrapment. So the way I would deal with that, Your Honor, is to cite to the more favorable cases for us, which are- No, I understand, but I mean, that's from our circuit. How would I distinguish that? I mean, the court said, you know, we're not going to exercise the, quote, Chancellor's foot, close quote, veto over police conduct of which we don't approve. Maybe it wasn't, you know, something you think you should do, but is it entrapment, especially when, in the case of your client, he was active in the planning for this? Yes, he was active in the planning, but the fact that he was active in the planning does not necessarily, as a matter of law, show predisposition. The best case I can cite to you for that- Well, usually what would happen is, you know, I don't feel real comfortable here, and I don't know if I really, you know, okay, maybe I'll just be in the car. I'm just not-this isn't what I've normally done in the past. You know, I've done some stuff. I've done some time. I'm not a robbery guy. Never said anything that even came close to saying that he wasn't willing to participate in this. Well, a couple of responses. First, he did previously express reluctance to participating in an armed robbery with the informant. That, he specifically testified to, and that was corroborated by Mr. Lawrence's testimony. Second, while I understand what Your Honor is saying about what would ordinarily happen, Dennis is actually not the ordinary person. He put into evidence that he suffers from cognitive impairments and is more susceptible to influence. Specifically here, the informant appeals to sympathy and to friendship to make him-to convince him to join the Stash House robbery conspiracy. And he also- He ended up getting, what, 180 months here? Yes, he did. And he could have gotten? He could have gotten 360 months to life. And Judge Arenas, God rest his soul, knocked it down by over half if it was beyond 360. That's correct. But remember, the reason why he knocked it down by that much, he did it because he found that Dennis lacked the propensity to sell the amount of drugs. Is that the reason, or the reason that he thought that maybe he had something- He thought the government trumped up the quantity. Yeah. No, he said- Well, yes, I do think- He thinks- Yes, Judge Arenas did say the government trumped up the quantity, but he also said on the record there's nothing that I've seen about this defendant that suggests that he has the capacity whatsoever to sell the amount of drugs that he's been charged with. That's in the record. Well, not having the capacity to sell that quantity is not- doesn't map perfectly onto the crime charged, right? No, but it does because he was- Is it a conspiracy, George? It is a conspiracy. That's correct. But the- So all he has to do is help the guy that's going to move it acquire the quantity, and then the other guy is going to move it. That's true. Yes, that is true, but- Yes, but still, I will just go back again. See, I'm getting back to-I'm trying to help you here, but I don't understand your argument for entrapment on the drug charge to be nearly as strong as the others because I didn't see anything in his record that showed violence or use of firearms. Yes. The closest thing is a burglary, right? That's correct. There's no robbery, there's no 922G, there's no- Yes. There's none of that, right? That's all correct. And perhaps more saliently, he gets up on the witness stand and testifies. I haven't owned a gun in 20 years, right? That's correct. That's correct, and a jury would have been free to credit that. Yes. And that was-your argument is that this is a jury question, not a- Yes. The judge shouldn't have, at the threshold, deprived the jury of the chance to say that this guy is telling the truth here. That is absolutely correct. The entrapment is a jury question, typically, and it should go to the jury so long as the defendant comes forward with some evidence that would allow the jury to find that he had been entrapped. Okay. We have a Mr. Coyne. Thank you. Thank you. Your Honors, good morning. May it please the Court, Mark Coyne on behalf of the United States. Can I just ask you a question at the outset? The standard for when a defendant is entitled to a jury instruction on entrapment is when the court believes that a reasonable jury could conclude that he was entrapped as a matter of law. So how does it make any sense for you to argue that an error in jury instructions would be harmless if there was an error? It can't be harmless. I'm sorry. I interrupted. No, go ahead. I think there's a little bit of wiggle room there, and here's where that wiggle room is. I think the question of whether the charge should go to the jury is really at its core a sufficiency of the evidence question. Is there sufficient evidence from which a reasonable jury could conclude that this person was both induced by the government's conduct? Evidence taken in a light most favorable to the defendant. Most favorable to him, the moving party. That's why I'm saying it's a sufficiency standard. And you say that he doesn't come forward with that evidence, right? He doesn't have the substantive evidence. We don't think the elephant is looking at all of this court's precedent, including Wright and Marino. We don't think he met the standard on either inducement in terms of the burden of production or lack of predisposition. But if I may conclude my answer to Judge Ambro and then revert back to that. So the question from a sufficiency viewpoint is there's got to be sufficient evidence from which a jury could reasonably find the facts in question. The judge in this court's precedent is legion in this. And as in all sufficiency cases, this court doesn't weigh the evidence. It's not making credibility findings when it's looking at sufficiency, neither should the district judge when it's determining sufficiency issues. I think there's a little bit of wiggle room in the sense that if testimony just violates the laws of physics, I don't think a court has to correct it. But here, Judge Irenas found the inference stronger were his words. And he had reason to doubt he was unwilling to assume that there was some truth that he was influenced by the mother's medical care. That sounds like he's weighing the evidence. And all of it when we talk about a jury, we're talking about one jury, one doubt. And that builds in part to the continuing answer to Judge Ambrose's question. But, yes, he did say that. And if he really thought it was appropriate to weigh the evidence at that stage, I think that was incorrect. What he had to do, though, under this court's precedent was evaluate all of the evidence in the record against the factors this court has set forth. And those factors, I will be the first to admit, can be a little bit fuzzy. I mean, there are a total of eight, I think, Judge Ambrose, that you listed in the Lacani opinion, bearing on just the predisposition prong as opposed to the inducement prong. But back to the harmlessness component, if we're focusing on harmlessness, there the court has to look at, whether it's the district judge in a Rule 29 context or this court in an appeal from a verdict context, has to look at all of the evidence in the record, all of it. And although it's still not making credibility determinations, it still has to look at all of the evidence. And then the question for the court is, is there sufficient evidence from which a reasonable jury could find both predisposition and lack of inducement, number one, for getting the charge, and number two, assuming there was, looking at all of the evidence in the record, would the giving of the instruction made a difference? And there I believe you are allowed to look at, you have to look at all of the evidence, not just his testimony. Yes, I'll even agree that you have to continue crediting his testimony, but you've got to look at all of his testimony. For example, his testimony from his own mouth, it's not just that he has prior convictions for dealing in various kinds of drugs. His testimony is that he was dealing in drugs very soon after meeting the very person who he says entrapped him. All right, but again, consistent with what I challenged Mr. Yastrow on, you've gone to your stronger suit, which is the guy has a history of drug dealing. But how does that help you with respect to the other two crimes? I don't see the evidence in the record that shows that this guy had a propensity to do an armed robbery. Where is that in the record? And if there isn't that affirmative evidence in the record, doesn't his statement, his own testimony, which is evidence, it's not argument of counsel, that's evidence, that I've never done one of those things and I haven't had a gun in 20 years, how do you overcome that? I think we can overcome it through this. We're not saying that the evidence in this record shows that he himself, through his prior convictions, through his own testimony, admitted facts showing a propensity to commit violence, at least not in his past. But what the evidence also shows is when he hears the pitch to rob this stash house, who does he bring to the party? He brings Codefendant Mitchell. He admits, and my counsel has admitted that, conceded that in their brief, in their opening brief, and the testimony in particular is at page, I believe, JA 1028 or 1029 in that ballpark. But that, sorry, JA 1029, he admits that he brought, he wrote in Mitchell. And he also admits in his testimony that he knew Mitchell had a reputation for robbing, quote, young bulls and liked to carry a gun. And that's at JA 1055. And so it's not so much that you're judging his predisposition or lack of propensity to engage in violence based on just his own record, but also who he's associating with. What were the other two charges? The other two charges were, well, the Hobbs Act conspiracy to commit armed robbery, 924C, felon in possession of a firearm in connection with a crime of violence, in this case, the Hobbs Act conspiracy, and conspiracy to possess with intent to distribute at least five pounds. All right. So you're saying even if he himself didn't have any violence in his background, the fact that he brought Mitchell, the violent guy, to the party, that's what gets him on the conspiracy trail? I think that gets him on the conspiracy. But he also had a gun in connection with the conspiracy. The testimony is clear that there was a gun in the red bag. But he says someone else gave it to him. He says somebody else gave it to him. Did he say Burke gave it to him? He says Burke gave it to him. And Burke's the government informant. But he also says that Burke, he accepted possession of it from Burke, and that it was in the footwell where he was sitting in the SUV when they drove to what they thought was going to be the staging ground for them, where they were doing their final sort of dress rehearsal for the home invasion. That that gun was in his footwell. And the evidence is clear from the tape. I don't think there's any dispute about that, that Mr. Dennis' role in this was going to be to stay outside art. The other, it's not just, by the way, Mr. Mitchell that he ropes in. He also, at the very first recorded meeting, says, insists on, even when Mitchell is suggesting they don't need another guy, Mr. Dennis is insisting on bringing in a man he refers to as F.C., Batcat, his best friend. And that's Terrence Hardy, co-defendant, who was convicted at this trial as well. Switching to something else, what significance is his 74 IQ here in this, though? I mean, it's – Man of severely limited intelligence dealing with the FBI. I think, you know, from an entrapment perspective, you have to accept that testimony, I think, to the extent it goes to whether he is susceptible or not. But even with that testimony in the record, two things. In Mitchell's own direct examination towards the end of it, his counsel asked him, you've heard that testimony, but you're not disputing that you couldn't understand what was going on. You couldn't follow it. And Dennis said, no, I'm not saying that. I understood what was going on. I could follow it. That's towards the end of the direct testimony of Mr. Dennis. But on top of that, I think, despite those impairments, and of course our expert disputed that, but that kind of battle of the expert, I think, you don't get to weigh in on, and neither could Judge Arenas, from an evidentiary sufficiency perspective. But despite – so assuming those impairments, in fact, are true, nonetheless, when the confidential informant, when Burke, pitched the bank robbery idea, according to Dennis, three times, the very first time he pitched it, Dennis's reaction was, he's watching too much TV. And he refused to do it. He declined all three times, despite what he describes as persistent applications by Mr. Burke. And so, as Judge Arenas pointed out in ruling on this, I differ with Judge Arenas on using the phrase, on drawing inferences. I don't think that's really – unfortunately, I can't ask him that. But I think what Judge Arenas was correct in saying, this is really kind of an extraordinary case, because the person who is supposedly inducing the defendant is somebody that, by his own admission, he's been committing drug trafficking crimes with for quite some time. And the very person who supposedly induced him is a person he declined by his own testimony. And Judge Arenas made clear he was crediting the testimony that those bank robbery pitches had been made, and crediting the testimony that Dennis said, I don't want to do that. That just proves, then, that Dennis doesn't do bank robberies. He has no propensity for bank robberies. Correct. But it doesn't help him on his propensity to do drug transactions. It does not at all. But, in the middle ground, is the armed robbery and the use of the firearm. That's why – And what's troubling, you know, maybe this is the former trial judge in me speaking, but, you know, there's an old saw in the trial bar, and I think, like many old saws, there's some virtue in it. And that is, when in doubt, let it in. And, you know, reading this record, I'm squirming now as an appellate judge because this outstanding jurist is saying, gee, you know, this is a tough case, and I don't know, and the circuit may reverse me, and I haven't been reversed on these before, but they might do it now. And it's a really close call. And, you know, I'm reading this thinking, well, yes, yes, you're correct. So let it in. You know, let it go to the jury. What's the harm? Why doesn't prudence dictate that we bottle all that up and say, you know what, let it go to the jury? At least on the robbery and gun counts, not necessarily the drug count. I certainly agree that prudence dictates letting the charge in. But prudence dictating letting the charge in is different from the law requiring that the jury so be charged.  Judge Ambrose's opinion in Lacani did note that the government noted that a defendant had a burden of production on entrapment but also noted that the government was not disputing that burden of production had been met in Lacani. And we prosecuted Lacani just like we prosecuted Mr. Dennis. We did not, actually I'm not sure, but certainly by the time the appeal was before the court we weren't saying that there was evidentiary insufficiency for entrapment in Lacani. But that doesn't mean, if you were to look at the facts in Lacani, that indeed that was a question that really had to go to the jury. We erred on the side of caution. Certainly on the appeal we erred on the side of caution and briefed it from a perspective of assume that he did have. It was properly instructed. It was a question for the jury. What can he do now? Here, I mean, and I think as Judge Ambrose was also pointing out, he also said everybody ought to be reversed at least once. God bless him. And when you watch that, when you read that part of the record, you see all the things that we admired about. That's so typical of Judge Arrhenius. All the things we admired about Judge Arrhenius, which is a formidable intellect grappling with a pretty complex record and a lot of case law, which, to be fair to the district judge, and I think to be fair to all the former trial judges here and perhaps aspiring trial judges in the audience, the law on entrapment and what you have to do to meet the burden of production isn't as perhaps crystal clear as it could be. And I don't know if it ever could be made crystal clear. And so what you wind up seeing in these cases is they rise or fall on the facts. And so you take a case like Watson. And what's strange about these facts is usually we have a defendant, for good reason, doesn't take the stand. He does take the stand. And this guy does. He does. And he says some things that are really helpful to him in respect to this issue. He does say some things that are helpful to him. But I don't know if he's lying or not, but I have to assume he was telling the truth. You've conceded that. I agree we have to assume he was telling the truth. And all I'm asking the court to do is look at all of his testimony, not just bits and pieces of the testimony, on that. Because, among other things, he admits it was his idea to bring in fat cash. Yeah, that's a great point. Let me ask you about that. Because one of the things I'm wrestling with is what's our measuring stick? In other words, there are a lot of damning things that he says on tape after he's agreed to participate. But does that weigh into the balance here? Or is the entrapment analysis a snapshot, or let's say it's a running movie that concludes at the time you get the defendant to agree to commit the crime? It's a running debate among various courts, as I know Your Honor is well aware. I mean, a lot of Mayfield talks about that. And there certainly is language in the cases, including this Court's own cases, and Federoff, which, Judge Nygaard, I know you sat on, were part of that panel, that you judge it from the moment before the approach was made and the inducement was made. Because once he agrees, he's going to be subject to all kinds of puffery. Right now he's a tough guy. Now he's a real bad guy. He's got to show his bona fides to the guys that he's conspired with to do this horrible deed. That certainly is his claim, and that's the argument that my good friends at the defense table have been making quite strongly. But this Court's precedent is also clear that ready receptiveness, sort of enthusiastic participation, even after the inducement has occurred, is a signal. It's very strong evidence. And even the Supreme Court itself said in Jacobson that ready willingness and ready acceptance in response to the inducement is ample evidence of predisposition, that the person was predisposed to commit the crime and therefore wasn't entrapped. It's still one of the factors you can look at. You don't turn a blind eye to what happened after the inducement was made. You also, I suppose, have this theoretical debate about when really did he agree to commit the offense. My final question is, what kind of oversight is the government going to need to exercise to be sure that cases don't venture too close to the line of entrapment? I mean, that's the reason here for the sentence being decreased significantly from the range that initially existed at step one. What do you do to try to walk back a little bit the types of situations where somebody doesn't have a predisposition to commit the crime and yet all the circumstances and the context are created for that person just to walk into it? The thing you have going for you here is I don't know of any evidence of Mr. Dennis that he said he did not have a predisposition to do this crime. But in future cases, you're really setting yourself up. Judge, I see my time has expired. I'd like to finish and answer, and it may take more than just 30 seconds to answer that. Because also I think part of this is kind of in the internal debate about which the Supreme Court has resolved about whether entrapment is measured by an objective standard or a subjective standard and what outrageous government conduct fits in. At least I sense that part of that is informing the question. So let me take a step back. I think you have to do a couple of things in these kinds of cases. You have to make sure that the person when you're approaching them, you're not required to. I think this court's case law in Driscoll said, at least in the outrageous government conduct context, you're not required to not even have a reasonable suspicion about somebody to approach them regarding criminal activity. That said, in my view, it's a very good idea. And in this case, our agents did confirm, they debriefed or received a report that Mr. Burke had information. They interviewed him. That interview is in pages one and two of our supplemental appendix, the report describing that, which reported a number of things, including some of which our agents were able to corroborate. And then they sent, according to that report, they sent Mr. Burke with a pitch. Are you interested in helping me rob a stash house? But they only did that after corroborating at least some of what they had heard from the confidential informant. I mean, I think another aspect of this, and maybe this trenches more on Judge Arenas' concerns about trumping up the quantity just to jack up the mandatory minimum. That wasn't our intention in this case. There's uncontradicted testimony in the record that the quantities that we selected for purpose of this thing were driven by what ATF and other law enforcement agencies had recovered in stash houses in the area, and that the quantity it uses does vary depending on what part of the country you're from. And they're using a quantity that they think is a realistic one. It's not much of a stash house if it's one kilo is what you're saying. Yeah, there's that. But beyond that, and so we take issue with that in the sense of that finding. But that's really not, we didn't appeal that here, and we don't have to appeal that here. Because I think one of the concerns here is are we exercising that kind of charging discretion responsibly? And I know this Court appreciates as much as I do that. I mean, on the one hand, the Executive Branch's exercise of its charging discretion is really that's a core function of the Executive Branch. But at the same time, there should always be a respectful dialogue between the Court and the Executive Branch about what is, about how we can better exercise that discretion. But I think we did exercise that discretion well, or at least reasonably well in this case, and we're committed to continuing to do so. I mean, we had a defendant who, by his own words on that recording, had said he was very familiar with drug packaging, was talking about the kinds of stamps, talking about unwrapping or rewrapping the bags of the bricks of cocaine to hide their outcome. And so when you get that kind of information coming from the defendant, that I think gives you a reasonable basis to conclude that he is for real. It's not just puffery, that he knows what he's doing and that when he says he's done this before or alluded to having done it before, as he does in these recordings, that there's something to that. But then at the final end, and I realize I've run grossly over it, I think it's a responsible exercise of charging discretion. And so I think we're aware of what our charging authority is and what these impacts are. We're not suggesting that Judge Arenas couldn't grant the variance that he did. We're not suggesting that at all. But we do think we exercise our discretion properly here, and we're committed to exercising it properly going forward to make sure we're not roping in, as the Supreme Court would say, unwary in a sense that we're only roping in unwary criminals. Thank you. Thank you, Your Honor. Mr. Yastra, really one key question. Am I incorrect in my statement to you and co-counsel that I don't know of any statement made by Mr. Dennis that indicated that he did not have a predisposition to commit this robbery and the other crimes associated with it? Perhaps I'm misunderstanding. He did on the stand. On the stand. Did he say anything on the stand that indicated or implied that he did not have the predisposition to commit the crimes charged? Yes. Yes. What he said on the stand was that he did not have the predisposition to commit any act of violence, including the crimes charged, and that what he said on the stand was that he had previously rebuffed disinformants' invitations to commit similar armed robbery. Now, let me also just be clear. Although the government certainly has a strong argument that could have been made to the jury about why Dennis was not entrapped, that's not this question. That's on appeal. All that has to be decided here was did Dennis come forward with some evidence of inducement and entrapment that, taking that record in the light most favorable to him, a jury could have credited and acquitted him upon. That evidence was introduced here. It was introduced in that he testified that he was induced by the informant, who was his friend of years and whose mother he knew and had met multiple times. And the informant appealed to him on the basis of that friendship and to his sympathy in order to get him to participate in this robbery, which he had been unable to do in the previous attempts. He also, as I said, expressed reluctance to participating in previous armed robberies. The criminal history is different. He had no history of violence, and a jury could certainly be within its right to find that, although he had some prior drug crimes, they were totally different than selling multiple kilograms of cocaine. There was unquestionably the government's initiation of the offense. And finally, Mr. Dennis has a cognitive disability. That made him more susceptible to the informant's influence in this case. I just want to emphasize again regarding the conspiracy to sell drugs. There's no doubt Mr. Dennis sold drugs in the past, and he sold drugs with this informant. That's not the end of the analysis. The question is, could the jury have reached a different inference here? Well, I think the key thing is the robbery is what we're focusing on. Absolutely. And as I've said, he turned down previous invitations to commit the robbery, and he had no prior robbery convictions. Thank you very much. Thank you to both counsel. Well presented arguments, and we'll take the matter under advisement and call it a day.